UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RICK MARTIN,                              Case No.  07-11405

               Plaintiff,

v.                                        District Judge Paul V.  Gadola
                                          Magistrate Judge R.  Steven Whalen
HANSON BRICK EAST, LLC,

               Defendant.
_____/

## REPORT AND RECOMMENDATION

Before the Court is Defendant Hanson Brick East, L.L.C.'s ("Hanson") *Motion for Summary Judgment*  [Docket #17], filed November 16, 2007, which has been referred for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's motion be GRANTED, as to both Plaintiff's claims of interference with his rights under the FMLA and the retaliation claim.

## I.  PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff Rick Martin filed suit on March 30, 2007, alleging violations of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. ¶2601, *et seq*. by his former employer, Defendant Hanson Brick East, LLC.

Plaintiff makes the following factual allegations. He began his employment with Defendant in October, 1998 and at the time of his discharge held the position of "Grade 7 floater" *Complaint* at ¶¶6-7. As a result of his son's medical problems, Plaintiff was approved for intermittent FMLA leave running from March 2, 2004 through March 2, 2005. *Id*. at ¶¶7-9; *Plaintiff's Response*, *Docket #19*, Exhibit 14. As a result of his son's renewed health problems, Plaintiff was granted an additional intermittent FMLA leave on October 27, 2005. *Docket #19* , Exhibit 10. Plaintiff advised plant superintendent Robert Clements on or around May 16, 2006 that he would require additional FMLA time on behalf of his son. *Complaint* at ¶10; *Response* at 3. Plaintiff alleges that he became depressed, notifying Defendant that he intended to take a leave on his own behalf, and does not dispute that he began calling in sick for his own condition beginning on either June 8 or 11, 2006. *Id*. at ¶¶12-13. According to Plaintiff, Clements did not request verifying medical documentation but instead urged Plaintiff to care for himself and his son. *Response* at 4, Exhibit 1 at 87. On or around July 6, 2006, Defendant imposed a five-day suspension for Plaintiff's repeated absences, followed by his discharge on July 18, 2006. *Complaint* at ¶¶14-15.

Plaintiff alleges that by terminating him "with the knowledge that he suffered from a serious health condition," Defendant willfully interfered with his rights under the FMLA, claiming further that "Defendant retaliated against [him] because he required leave under the FMLA," to care for his son, resulting in lost wages and benefits as well as loss of employment opportunity. *Id.* at ¶¶17-18, 24, 26-28. Plaintiff seeks monetary damages as

well as attorneys' fees.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

## III.   ANALYSIS

Defendant raises multiple arguments for summary judgment.   First, Defendant contends that at the time Plaintiff sought leave for his own condition, he was ineligible for FMLA leave or protection.   Defendant argues next on a related note that because Plaintiff had received more than his full FMLA leave allotment at the time of his July 18, 2006 termination, his claim for recovery under Act must be dismissed.   Defendant states alternatively that even if he was entitled to additional FMLA leave time at the time of his termination, he "has no FMLA entitlement claim because he could not have returned to work by the end of 60 days of leave."   Last, Defendant disputes that Plaintiff was terminated in response to his assertion of FMLA rights, contending that the July, 2006 termination was the result of Plaintiff's long string of undocumented absences.

### A.  Applicable Law

"The FMLA entitles qualifying employees to take up to twelve weeks of unpaid leave, without fear of termination, when the leave is taken for . . . 'a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Wysong v. Dow Chemical Co.,* 503 F.3d 441, 446 (6th Cir. 2007)(*citing* 29 U.S.C. §§ 2612(a)(1)(D), 2614(a)(1)).  "A 'serious health condition' is 'an illness, injury, impairment, or physical or mental condition that involves . . . inpatient care in a hospital, hospice, or residential medical care facility; or . . .continuing treatment by a health care provider." *Id.* (*citing* 29 U.S.C. § 2611(11)).

"The FMLA also permits an employee to take leave from work to care for a parent, spouse, or child suffering from a serious health condition." *Novak v. MetroHealth Medical Center,* 503 F.3d 572, 581 (6th Cir. 2007); 29 U.S.C. § 2612(a)(1)(C). "An employee need not specifically mention the FMLA when taking leave; all the employee must do is notify the employer that FMLA-qualifying leave is needed." *Chandler v. Specialty Tires of America (Tenn.), Inc.,* 283 F.3d 818, 825 (6th Cir.2002); 29 C.F.R. § 825.303(b). The employee may receive "one block of leave of twelve weeks or fewer" or "intermittent leave, which is 'taken in separate periods of time due to a single illness or injury . . . and may include leave of periods from an hour or more to several weeks'" *Hoffman v. Professional Med Team*, 394 F.3d 414, 418 (6th Cir. 2005)(*citing* 29 U.S.C. §§ 2612(a)(1), 2611(9); 29 C.F.R. §§ 825.800).

A plaintiff can recover for violations of his FMLA rights under the "interference theory" (29 U.S.C. § 2615(a)(1)) and/or the "retaliation theory." *Hoffman,* at 418 (*citing* 29 U.S.C. § 2615(a)(1)(2)). Under 29 U.S.C. § 2615(a)(1), an employer cannot "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" guaranteed by the Act. In establishing an interference claim, "a plaintiff must demonstrate the following:

> "(1) [he/]she was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of her intention to take leave; and (5) the employer denied the employee FMLA benefits to which she was entitled."

*Killian v. Yorozu Automotive Tennessee, Inc.*, 454 F.3d 549, 556 (6th Cir. 2006)(*citing Walton v. Ford Motor Co.,* 424 F.3d 481, 485 (6th Cir.2005)).

As to a "retaliation" claim, 29 U.S.C. § 2615(a)(2)(2) forbids "any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the Act. "An FMLA retaliation claim is governed by the familiar burden shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Fritz v. Phillips Service Industries, Inc.,* — F.Supp.2d — ,2008 WL 2026134, 8 (E.D.Mich.2008)(Gadola, J.); *Edgar v. JAC Prods., Inc.,* 443 F.3d 501, 508 (6th Cir.2006). In establishing a retaliation claim, a plaintiff must show:

> "(1) [he/]she was engaged in an activity protected by the FMLA; (2) the employer knew that [the employee] was exercising . . . rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to [employee]; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action."

*Killian,* 454 F.3d at 556 (*citing Arban v. West Publ'g Corp.,* 345 F.3d 390, 404 (6th Cir.2003)).

Once the plaintiff has made this showing, the burden shifts to the Defendant to articulate a nonretaliatory reason for taking the challenged action. *McDonnell-Douglas* 411 U.S. at 802-803, 93 S.Ct. at 1824.[1] If the Defendant satisfies that burden, the Plaintiff must then prove, by a preponderance of the evidence, that the proffered reason for the Defendant's actions is not the true reason, but rather a pretext for retaliation. *Id*. at 804-805, 1825. "A plaintiff establishes pretext by showing that the reason offered by the defendant:

---

[1]This is a burden of production. *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 868 (6th Cir. 2001).

1) has no basis in fact; 2) did not actually motivate the decision; or 3) was insufficient to warrant the decision." *Saab v. Womack,* 2008 WL 240833, *4 (E.D.Mich. 2008)(Cox, J.); *Manzer v. Diamond Shamrock Chem. Co.,* 29 F.3d 1078, 1084 (6th Cir.1994).

**B. The Interference Claim**

**1. 1250 Hours**

Defendant submits first that Plaintiff's entire claim founders on his ineligibility for FMLA leave or protection when he sought leave for his own illness. *Defendant's Brief* at 12-13. *See also*, *Killian, supra,* 454 F.3d at 556. Calculating Plaintiff's own leave from June 8 or 11, 2006, Defendant argues that in the 12 months directly preceding, Plaintiff did not complete the 1,250 work hours needed for leave entitlement.[2] Defendant's Brief at 12-13; 29 C.F.R. 825.110(a)(2).

First, assuming that the May-July leave days are a continuation of the intermittent leave granted in October 27, 2005 on behalf of his son, Plaintiff's work hours would be reckoned from the October date backward rather than recalculating the 12-month period

---

[2] The voice mail messages Plaintiff left with his employer between May 16 and June 7, 2006 all indicate that his son's condition prevented him from attending work . *Docket #17, Exhibit 26* at 1- 2. Plaintiff's notification date is set at either June 8 *or* June 11, 2006 depending on whether his June 8, 2006 voice mail is interpreted to report an absence because of his son or because of his own condition: " I'm just not feeling well with what's going on with my son." *Docket #17, Exhibit 26* at 2. From June 11, 2006 forward, all of Plaintiff's calls state unambiguously that he is unable to work due to his own condition. *Id*. Viewing the evidence in the light most favorable to Plaintiff, the Court will construe the June 8, 2006 message as placing Defendant on notice that Plaintiff's own condition prevented him from working.

every time additional leave is requested within the year of the approval. *See Barron v. Runyon,* 11 F.Supp.2d 676, 681 (E.D.Va.,1998)("recalculating backwards from every request for leave time after the initial approval would render the concept of 'intermittent' leave meaningless, essentially reading it completely out of the statute.")(Emphasis removed). Likewise, although Defendant characterizes the May, 2006 request for FMLA leave as a "new claim,"on behalf of Plaintiff's son, it apparently concedes that as of May 16, 2006, Plaintiff had completed the requisite 1,250 hours of work in the preceding 12 months. Assuming that Plaintiff was otherwise eligible for FMLA, he had accumulated enough hours between May 16, 2005 and May 15, 2006 for a claim on his own behalf.

However, I disagree that Plaintiff's absences stemming from his own illness should be construed as a continuation of either the October 27, 2005 or May 16, 2006 leave time granted for his son's conditions. Nothing in the Act suggests that after being approved for up to 60 days of intermittent leave for one reason, an employee, without notice or supporting documentation, can simply use the allotted days for different (albeit legitimate) reasons. For this obvious reason, Defendant's Family and Medical Leave Policy, incorporating the FMLA, reasonably states that "[a]n employee's request for leave for his or her own serious health condition, or a covered family member's serious health condition, must be supported by an adequate medical certification." *Docket #17*, *Exhibit 3* at 3. As such, Plaintiff cannot claim FMLA leave for himself on the basis of his *son's* October, 2005 medical certification. Because a request for leave must be supported by medical certification of the condition at

issue, the theory that his son's October, 2005 certification, signed by a pediatrician, entitled Plaintiff to leave time for himself must be rejected. *Docket #19*, *Exhibit 10*.

For overlapping reasons, I also disagree with Plaintiff's characterization of the May 16, 2005 leave as the beginning of a *continuous*, rather than intermittent leave. *Plaintiff's Brief* at 11. Admittedly, after calling in absent on May 16, 2006, Plaintiff did not return to work before his July 12, 2006 termination. However, the record is absent any indication that Plaintiff requested or was approved for a continuous rather than intermittent leave as of May 16, 2006. This argument also stands at odds with the premise that he was still entitled to leave time under the October 27, 2005 *intermittent* leave. More obviously, Plaintiff notified his employer on 22 separate occasions between May 16 and July 10, 2006 that he would be unable to attend work the following day. If he believed that he had been placed on continuous leave, calling in individual absences would be unnecessary. Further, even if the Court were to construe the leave starting May 16 on behalf of Plaintiff's son as a continuous leave, this does not, as discussed above, relieve Plaintiff of the obligation to notify Defendant or certify his own condition.[3] *Brock v. United Grinding Technologies, Inc.,* 257 F.Supp.2d

---

[3]

An opinion letter (FMLA-112) by the Department of Labor ("DOL") is applicable. "Assume . . . at the time of the second and different FMLA-qualifying circumstance, the employee does not meet the 1,250-hour eligibility test. In this situation, the employee would not be entitled to FMLA leave for *that* ( *i.e.*, second) reason. Thus, it is possible that an employee could remain eligible for leave for one FMLA-qualifying reason for which prior notice had been given when the employee met the 1,250-hour test ( *i.e.*, MS), but not be eligible for FMLA leave for a different FMLA-qualifying reason ( *i.e.*, surgery and recovery), due to the 1,250-hour test being re-calculated at the *commencement* of the subsequent and separate need for leave." 2000 WL 33157366 (emphasis in the original).

1089, 1100 (S.D.Ohio,2003).  Without more than his son's medical certification, Plaintiff

cannot use either October 27, 2005 or May 16, 2006 in  calculating FMLA eligibility for his

own condition.

Thus, Plaintiff must establish that at the time that he notified his employer of *his own*

*condition*, he had worked 1,250 hours in the 12 months preceding his application.  Plaintiff

cannot make this showing.  First, although Plaintiff contends that he had worked a total of

1,288.40 hours in the 12 months preceding May 16, 2006, there is an absolute dearth of

evidence to support the notion that he applied for leave on the basis of his own medical

condition on that day.  Instead, the record shows that Plaintiff first reported his own illness

by voice mail on June 8, 2006.[4]  *Defendant's Brief*, Exhibit 26.   Plaintiff's own reckoning

indicates that he did not work 1,250 in the 12 months prior to *that* date, stating that "[f]or the

time period of June 2005 through May 15, 2006, [he] worked a total of 1,195.10 hours."

Using these  calculations, and because he did not accrue *any* additional hours between May

16, 2006 and June 8, 2006, the June 8, 2005 to June 8, 2006 hours would be reduced by the

93.3 hours worked between May 16 and May 28, 2005, amounting to 1,101.80 hours - even

assuming that Plaintiff informed Defendant by June 1, 2006 of his own condition.

Further, the claim that Plaintiff notified Defendant of his illness within his eligibility

---

[4] Assuming that he was otherwise eligible for FMLA leave, verbal notification that he
was unable to work would be sufficient to preserve his entitlement.  *Chandler, supra,* 283
F.3d at 825.

period or at any point prior to June 8, 2006, is unsupported by the record.   Plaintiff stated in deposition that he spoke with Superintendent Clements on two occasions regarding his May 16, 2006 request for leave time, indicating that during the first conversation, he told Clemens that he needed time off to care for his son. *Docket #17*, Exhibit 35 at 34.   Plaintiff acknowledged that he could not recall anything further about the conversation.  *Id.* at 35. Plaintiff testified that upon speaking to Clements a second time, he informed Clements that he required leave for his own problem.  *Id.*   He testified that he could not recall the date of the conversation, but stressed that during the second conversation, he had informed Clements that he was currently taking antidepressants prescribed by Dr. Behn.  *Id.* at 39.  Exhibit 37 of Defendant's Brief indicates that Dr. Behn did not begin treating   Plaintiff until June 17, 2006 - thus Plaintiff's notification to Clements that he required leave, post-dating his June 17, 2006 with Dr. Behn, could not have been executed within his period of eligibility.[5]  *Id.* at *Exhibit* 37 .

### 2.  Equitable Estoppel

Plaintiff argues that even if he is ineligible under the Act, Defendant should be equitably estopped from disputing his entitlement.  *Plaintiff's Brief*, *Docket #19* at 11-13. Citing *Mutchler v. Dunlop Memorial Hospital*, 485 F. 3d 854 (6th Cir. 2007), Plaintiff contends that after being assured that he was eligible for leave, Defendant was estopped from

---

[5]

Plaintiff's admission that his second conversation with Clements occurred after his June 17, 2006 appointment with Dr. Behm is consistent with Clements' deposition testimony that he spoke with Plaintiff on June 21, 2006.  *Docket #17*, Exhibit 37 at 38.

later challenging his eligibility. *Plaintiff's Brief* at 11.

"'The doctrine of equitable estoppel is a judicial doctrine of equity which operates apart from any underlying statutory scheme.'" *Mutchler, supra,* 485 F.3d at 861 (*citing Kosakow v. New Rochelle Radiology Assocs., P.C.,* 274 F.3d 706, 724 (2d Cir.2001). "Consequently, 'even in the absence of a formal regulation, the doctrine of equitable estoppel itself may apply where an employer who has initially provided notice of eligibility for leave later seeks to challenge that eligibility.'" *Id.* (*citing Woodford v. Community Action of Greene County, Inc.,* 268 F.3d 51, 57 (2nd Cir. 2001)). "To successfully invoke the doctrine, a claimant must show:

> (1) conduct or language amounting to a representation of material fact; (2) awareness of true facts by the party to be estopped; (3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended; (4) unawareness of the true facts by the party asserting the estoppel; and (5) detrimental and justifiable reliance by the party asserting estoppel on the representation."

*Id.*; *Tregoning v. Am. Cmty. Mut. Ins. Co.,* 12 F.3d 79, 83 (6th Cir.1993)(*citing Armistead v. Vernitron Corp.,* 944 F.2d 1287, 1298 (6th Cir.1991)).

Here, Plaintiff bases his estoppel argument on the claim that Defendant represented to him that his leave was covered by FMLA, noting further that Defendant's internal attendance calender had in fact designated his May and June, 2006 leave as FMLA time. *Docket #19*, Exhibit 3. Plaintiff also notes that after his termination, Clemens assured him that he was "not out of compliance with any type of FMLA situation." *Id.* (*citing* Exhibit 2).

Plaintiff states elsewhere that when he informed Clemens that he was unable to work, Clemens told him to "go ahead and take the time that [you] need[] and get better and come back." *Id*. (*citing* Exhibit 1 at 87). Plaintiff also alleges that Clemens never asked him to fill out paperwork.

Defendant is not estopped from challenging Plaintiff's FMLA eligibility. First, as noted by Defendant, because Plaintiff did not attend work after May 16, 2006, he cannot have relied Defendant's internal attendance records indicating that he was on FMLA leave for the period in question. Plaintiff fails to even allege that he viewed the records prior to his termination. Second, the fact that the records state that he was on FMLA leave for these months is clearly attributable to the fact that he had been granted leave on behalf of his son's condition on October 27, 2005 and had notified Defendant on May 16, 2006 that he would require additional leave time to care for his son. The records do not suggest that Plaintiff had requested or received leave time for his own condition.

Even assuming for the sake of argument that Plaintiff met the first four prongs of the estoppel test by showing that Clemens or others represented that he was entitled to his own claim under FMLA leave, he is unable to establish that he relied upon these representations to his detriment. Plaintiff's contention that Clemens or others encouraged him to believe that leave time taken on his own behalf was covered by FMLA is undercut by the fact that he did not notify his employer that he sought leave time for himself until after his period of eligibility had expired. Accordingly, Plaintiff provides no support for the argument that he

took time off as a result of Defendant's representation that his son's FMLA leave time would apply to his own condition. Further, Plaintiff cannot show that his assumption that he was covered his son's leave was "justifiable." By May, 2006, Plaintiff had already applied for and received two separate FMLA leaves on behalf of his son, both of which required medical certification of his son's condition. Defendant cannot be estopped by Plaintiff's unilateral expectation that the leave granted because of his son's condition would accord him leave time on his own behalf.

### 3. FMLA Leave Available at the Time of Termination

Defendant also argues that Plaintiff had received his full entitlement to FMLA leave at the time of his July 18, 2006 termination. *Docket #17* at 15-16. Including both Plaintiff's sick days and absences as a result of his son's condition from July 18, 2005 forward, Defendant contends that Plaintiff had used 83.5 FMLA days in the year before his termination.[6] *Id.* Defendant cites *Ragsdale v. Wolverine World Wide, Inc.,* 535 U.S. 81, 122 S.Ct. 1155, L.Ed.2d 167 (2002), for the proposition that Plaintiff's sick days could be counted toward his FMLA allotment.

Plaintiff disputes Defendant's 83.5-day calculation, alleging that Defendant failed to notify him that 12 sick days taken in August and September, 2005 and 16 sick days in

---

[6] Defendant's 83.5 days calculation is apparently figured using 12 days absence from August/September, 2005; eight days in November/December, 2005; one day in January, 2006, and 16 days in February (in addition to the May 16 through July 18, 2006 absences). *Defendant's Brief* at 14-16.

February, 2006 would be counted toward his 60-day FMLA allotment. *Plaintiff's Brief* at 13-14. He argues that Defendant is thus precluded from including his own sick days as FMLA days, contending that at the time of his July 12, 2006 suspension, he was entitled to an additional 7.5 FMLA days. *Id.*

Defendant makes no showing that it has complied with the 29 C.F.R. §825.208(c) requirement that an employee must be notified that earlier leave time would be designated as taken from the FMLA allotment.[7] However, Defendant is correct that under *Ragsdale*, an employer cannot be categorically penalized for "failing to designate earlier leave as FMLA leave." *Rankin-Peters v. Huron Chapter Tp.* WL 2660732, *7 -8 (E.D.Mich. 2006)(Cleland, J.); *Ragsdale*, 535 U.S. at 89, 122 S.Ct. at 1161, 152 L.Ed.2d 167 (2002). The notion that employers should be penalized by forfeiture of the FMLA-designated hours pursuant to 29 C.F.R. §825.208(c) has been rejected by *Ragsdale*, which held that unless Plaintiff can show resulting prejudice, he is not entitled to recover for a violation of the notice provision. 535 U.S. at 88-89, S.Ct. at 1161; *see also Blake v. Seabury & Smith, Inc.*, 2007 WL 4126361, *5 (E.D.Mich.,2007)(Friedman, J.)("[A]n employee has no remedy for his or her employer's technical violation of the FMLA's notice requirements if the employee received all of the FMLA leave to which he or she was entitled."). Because at the time of his termination, Plaintiff had received 83.5 leave days, he cannot show that he was prejudiced by Defendant's failure to inform him that sick days taken before and after the October, 2005

_____

[7]However, this information is contained in Defendant's employee handbook. Docket #17, Exhibit 3 at 3.

-15-

leave request would be counted as FMLA days.[8]

### 4. Whether Plaintiff Could Work by the End of his 60 Day Leave

Defendant submits that even assuming that Plaintiff's August, 2005 through February, 2006 sick days are omitted from his FMLA leave days, he was entitled to only 4.5 leave days at the time of his termination. *Defendant's Brief* at 16-18. Defendant argues that Plaintiff nonetheless "has no FMLA entitlement claim because he could not have returned to work by the end of 60 days of leave." [9] *Defendant's Brief* at 17 (*citing Edgar v. JAC Products, Inc.,* 443 F.3d 501, 513 (6th Cir. 2006).[10] Defendant contends that because

_____

[8]

Further, the facts would not support an equitable estoppel argument that Plaintiff relied to his detriment on Clement's assurance that he could take as much leave time as he needed. *See Kesler v. Barris, Sott, Denn & Driker*, *PLLC*, 482 F.Supp.2d 886, 896 (E.D.Mich.2007)(Gadola, J.). As discussed *supra,* the alleged conversation could not have taken place before June 17, 2006. In an abundance of fairness to Plaintiff, the Court will assume that the conversation took place on June 17 and further assume that Plaintiff took off the following 12 work days before his July 12, 2006 suspension in reliance on Clement's statement. However, even when subtracting his last 12 leave days, he had still exceeded his 60-day FMLA allotment by the time of his suspension.

[9]In contrast to Defendant's count, assuming that the August/September, 2005 and February/March, 2006 sick days are omitted, Plaintiff calculates that he had 7.5 additional leave days at the time of his termination. This discrepancy is not material to the Court's findings.

[10]

*Edgar v. JAC Products, Inc.,* 443 F.3d 501, 513 (6th Cir. 2006), states that "evidence revealing the employee's inability to return" to work by the end of the 60-day leave provides a defense to liability "regardless of whether the medical evidence is available before or after the termination decision." Plaintiff attempts to distinguish Edgar, by noting that none of his treating records state explicitly that he was unable to work. *Docket # 19* at 17. However, as discussed *infra*, Plaintiff, friend Joanna Luckhurst, and statements by his union representative all indicate that Plaintiff was unable to work until at least mid-August, 2006.

Plaintiff admitted that he was unable to return to work until at least mid August, 2006, it was entitled to discharge him on the basis that his leave time would be exhausted before he could return to work. *Id.*

Plaintiff in turn submits a December 4, 2007 affidavit stating that "[h]ad I known that I would be discharged if I was unable to return to work by July 25, 2006, I would have immediately advised my doctor and sought a medical release to return to work. I believe I would have been able to return to work by this time." *Docket #19*, Exhibit 8 at ¶3.

Viewing these contentions in the light most favorable to Plaintiff, he had nonetheless exhausted his FMLA leave days at the time of his suspension. The Court need not determine whether he was capable of returning to work before July 25, 2006. Nonetheless, I note that Defendant has shown alternative grounds for dismissal on this basis. Plaintiff's December, 2007 affidavit is directly contradicted by his own July 20, 2007 deposition testimony that he was unable to work until "mid August," 2006. *Docket #17*, Exhibit 35 at pgs. 42-43, 133-134. Paragraph three of the December 4, 2007 affidavit should be stricken on the basis that although an affidavit's submission is permitted to "supplement incomplete deposition testimony . . . a party should not be able to create a disputed issue of material fact where earlier testimony on that issue by the same party indicates that no such dispute exists." *Aerel, S.R.L. v. PCC Airfoils, L.L.C.,* 448 F.3d 899, 907 (6th Cir. 2006). Plaintiff is thus barred "from avoiding summary judgment by simply filing an affidavit that directly contradicts" his testimony. *Id.*

Likewise, Plaintiff's girlfriend Joanna Luckhurst testified in September, 2007 that she believed that he was unable to work in June through October, 2006. *Docket #17*, Exhibit 35 at 48. The transcript of a meeting between Plaintiff, Clements, Defendant's Plant Manager Tom Carr, and three union representatives subsequent to his discharge indicates that as of August 11, 2006, Plaintiff had not yet received a work clearance. *Docket #17,* Exhibit 32 at 2. Further, at that time, Plaintiff did not contradict a union representative's statement that he was currently unable to work. *Id.*

### C. The Retaliation Claim

Finally, Defendant states that it can show legitimate, non-retaliatory reasons for the termination, defeating Plaintiff's claim that it retaliated against him for asserting his rights under the FMLA. *Defendant's Brief* at 18-19. Defendant contends that Plaintiff's dismissal was the result of his own failure to make a timely submission of medical documentation to support his absences. *Id.*

First, because Plaintiff was ineligible for FMLA leave at the time of his termination, in the narrow sense, he cannot show that he "was engaged in an activity protected by the FMLA." *Killian, supra*, 454 F.3d at 556. However, assuming the earlier FMLA leave approved on behalf of his son constitutes protected behavior, he meets the first prong required for a prima facie case of retaliation. Likewise, Defendant's awareness that he was exercising his rights under Act and his termination satisfy the test's second and third prongs.

In contrast, evidence of a causal connection between the assertion of his *legitimate*

rights and the termination is tenuous at best. Although Plaintiff claims that one supervisor was rude to him and that another indicated that he did not want Plaintiff "on his shift," he acknowledges that he did not experience adverse action when applying for FMLA in either March, 2004 or October, 2005. *Docket #19*, Exhibit 1 at 25-28. Nonetheless because he can show at least a temporal proximity between his May 16, 2006 request for additional leave and his July, 2006 termination, the Court will assume the existence of a prima facie case.

However, Defendant has met its burden of production by showing nonretaliatory reasons for Plaintiff's termination. *McDonnell-Douglas*, 411 U.S. at 802-803, 93 S.Ct. at 1824. Citing 29 C.F.R. §825.305(b), Defendant notes that although Plaintiff began taking absences for his own condition on June 8, 2006, he admits that he failed to provide any medical documentation confirming his condition between then and his July 12, 2006 suspension. *Defendant's Brief* at 18, Exhibit 3 at 3; 29 C.F.R. § 825.301(a)(1).[11] Plaintiff's

---

[11]

Further, Plaintiff's claim that Defendant failed to provide renewed written notice that he needed to submit paperwork at the time he began taking absences on his own behalf is unavailing. 29 C.F.R. § 825.301 (b)(1), (c). Section 825.301 refers to an employer's notice obligations under the FMLA. As discussed above in Section **B.**, *supra*, Plaintiff was ineligible for FMLA leave well before his string of absences beginning on June 8, 2006. Because Plaintiff's FMLA leave entitlement was exhausted before his termination, he cannot show that he was prejudiced by Defendant's non-compliance with § 825.301. *Blake, supra,* 2007 WL 4126361, *5 ("Because Plaintiff received all of the FMLA leave to which she was entitled before her termination . . . she would have to demonstrate that Defendant's lack of notice caused her some sort of prejudice in order to recover under the FMLA."). Moreover, Plaintiff's claim that he was never asked to submit paperwork is disputed by Clement's testimony that Plaintiff picked up the medical certification paperwork as requested on June 21, 2006 at Defendant's workplace, but did not return it. *Docket #17,* Exhibit 15 at pgs. 38-39.

accumulation of more than twenty unexplained absences between June 8, 2006 and his suspension provides legitimate grounds for dismissal. Further, Defendant's Plant Supervisor, Tom Carr, stated on August 11, 2006 that Plaintiff as of that time had failed to comply with requests for medical documentation to support his need for June-July leave time. *Docket #17*, Exhibit 32 at 2. Clements, also present, reiterated that Plaintiff was not terminated for previously asserting his right to FMLA leave, but because of his own unexcused absences:

> "[W]e are lenient and we do understand people have things that they are going through. But when the calls shift from [']I [am] having trouble dealing with my son, I'm having trouble with son['] to [']I'm not feeling well,['] and other excuse[s] other than that [']I'm not feeling well,['] well, then obviously it's been a period of time that he has been dealing with his son and now the excuse, the call ins, and he has been calling in regularly, and I wouldn't dispute that a bit, but they shifted to the problem with his son is now [']I don't feel well all of sudden.['] An no documentation, no med notices from any doctors. . ."

*Id.*, Exhibit 32 at 4.

Plaintiff, once again faced with the burden of production, cannot show that Defendant's reasons for terminating him are pretextual. He claims that he was first asked to provide medical documentation on July 11, then unfairly terminated seven days later, depriving him of the 15 days to supply medical documentation allowed by the FMLA. *Docket #19*, Exhibit 14. However, aside from the fact Plaintiff was then ineligible for FMLA leave, Plaintiff had not yet provided medical documentation to support his absences as of August 11, 2006. At that time, Plaintiff did not deny that he had been asked for documentation prior to his termination.

In an additional attempt to show that Defendant's purported reasons for terminating him were pretextual, Plaintiff alleges that subsequent to receiving the March, 2004 FMLA intermittent leave, a supervisor "wouldn't listen to me[,] turned around[,] and walked away." *Docket #19*, Exhibit 1 at 26-28. Although presented as evidence of retaliatory motives, Plaintiff is unable to show a causal connection between his then-supervisor's conduct and his July, 2006 termination. Likewise, Plaintiff's claim that a co-worker stated in 2004 or 2005 that a supervisor did not want Plaintiff "on his shift" because he took leave time does not establish a causal connection between the supervisor's earlier remarks and Plaintiff's later termination following a 22-day string of unaccounted absences.[12] *Id*. Plaintiff's acknowledged and extended failure to provide reasons for his absences provides obvious and ample justification for his termination.

## IV. CONCLUSION

---

[12]

Because Plaintiff cannot show that either supervisor played a role in his termination, these incidents do not constitute direct evidence of discrimination. "Unless the statements or conduct of nondecisionmakers can be imputed to the ultimate decisionmaker, such statements or conduct can not suffice to satisfy the plaintiff's burden of demonstrating animus." *Noble v. Brinker Intern., Inc.,* 391 F.3d 715, 724 (6th Cir. 2004)(internal citations omitted). Plaintiff has not alleged that either individual played a part in his termination. Even assuming the presence of direct evidence,"a plaintiff may not make out a case of [retaliation] if . . . there were other good and sufficient reasons established" for the adverse action. *Todd v. City of Cincinnati,* 436 F.3d 635, 637 (6th Cir. 2006)() (*clarifying Monette v. Electronic Data Systems Corp.,* 90 F.3d 1173, 1178 (6th Cir.1996)). Without dispute, Plaintiff's month-long string of unsupported absences directly preceding his termination constitutes "good and sufficient reasons."

For these reasons, I recommend that Defendant's motion for summary judgment [Docket #17] be GRANTED both as to Plaintiff's claims of interference with his rights under the FMLA and the retaliation claim.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.CT. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen

-22-

R. STEVEN WHALEN

UNITED STATES MAGISTRATE JUDGE

Dated:  July 1, 2008

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on July 1, 2008.

s/Susan Jefferson

Case Manager